MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
K. JILL BOLTON
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 22 2012

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

DEBRA VAN BRUNT-OREIRO dba,
ADJR COUNSELING SERVICES,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CR-12-27-JLQ**

INDICTMENT

Vio: 18 U.S.C. § 1347
Health Care Fraud
(Counts 1-21)

The Grand Jury Charges that at all times material hereto, unless otherwise alleged:

### I. General Allegations

1.     ADJR COUNSELING SERVICES, LLC ("ADJR"), was a facility located in Omak, Washington, in the Eastern District of Washington, which provided mental health counseling and therapy services to the local communities of Okanogan and Ferry Counties, whose clients are primarily Colville Confederated Tribal members and their families.

2.     The Defendant, **DEBRA VAN BRUNT–OREIRO ("OREIRO")**, was a resident of Okanogan County, Washington, in the Eastern District of Washington, and the owner and primary medical provider associated with ADJR Counseling Services. **OREIRO** was licensed to practice as an independent social worker in the State of Washington on January 29, 2002, under License Number LW00006875. This license was current and was set to expire on October 21, 2012.

INDICTMENT - 1
P20221lc.JBA.wpd

**OREIRO** also maintained an active Practical Nurse License (LP00055397) in the State of Washington that was also set to expire on October 21, 2012.

3.    The Colville Confederated Tribe ("CCT") was comprised of more than nine thousand descendants of 12 aboriginal tribes of Native Americans.  The CCT land base covered twenty-one thousand square acres in North Central Washington, primarily within the areas of Okanogan and Ferry Counties.  The CCT Behavioral Health Unit was established to serve the mental health needs of tribal members. The CCT also contracted a portion of its mental health services out to independent health care providers.

4.    The CCT held medical provider contracts with the Washington State Medicaid Program ("Medicaid"), a public health care benefit program within the meaning of Title 18, United States Code Section 24(b). Through this contractual arrangement, the CCT submitted claims for reimbursement to Medicaid for services provided to eligible tribal members and their families under Medicaid Provider Number 1980812. In turn, the Centers for Medicare and Medicaid ("CMS"), also a public health care benefit program within the meaning of Title 18, United States Code Section 24(b), reimbursed Medicaid, on quarterly basis, for one hundred percent of the funds paid to the CCT.

## II.  The Health Care Benefit Programs

5.    A "health care benefit program," as defined by Title 18, United States Code Section 24(b), includes any public or private plan or contract, affecting commerce "under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."

6.    The Washington State Medicaid Program under Title XIX of the Social Security Act and the Centers for Medicare and Medicaid "(CMS")" were

INDICTMENT - 2
P20221lc.JBA.wpd

"health care benefit programs."

## The Medicaid Program

7.     The Medicaid program was created in 1962 under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., whereby the United States shared with the fifty States the cost of medical services provided to indigent families with dependent children, and to aged, blind, and disabled individuals whose income and resources were insufficient to meet the cost of medical services.

8.     The Washington State Department of Social and Health Services - Medicaid Payment Administration, (hereinafter "DSHS") administered the Medicaid program in the State of Washington. DSHS handled all aspects of the administration of the Medicaid program, including contracting with health care providers, processing bills, conducting audits, and making payments to providers.

## The Medicare Program

9.    The Medicare program provides medical insurance benefits for individuals typically aged 65 years or older and/ or certain disabled individuals. Medicare Part A, the Basic Plan of Hospital Insurance, covers the cost of inpatient hospital services and post-hospital nursing facility care.  Medicare Part B, the Voluntary Supplemental Insurance Plan, covers the cost of physician's services, including services provided to patients who are hospitalized, if the services are medically necessary and directly or personally provided by the physician.

10.    The Medicare program is administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS").  CMS, in turn, contracts with private insurance companies called "carriers" for Part B and "Fiscal Intermediaries" for Part A, who in turn process and pay individual Medicare claims.  The Medicare Part B program is administered in Washington state by Noridian Government Services ("Noridian") which, pursuant to its contract with HHS, receives, adjudicates, and pays claims

INDICTMENT - 3
P20221lc.JBA.wpd

submitted by physicians/providers and suppliers of medical services.

<u>Washington Medicaid Mental Health and Indian Health Services</u>

11.    Public Law 93-638, the Indian Self-Determination and Education Assistance Act, provided the basic federal funding for Tribal health activities. In Washington State, the American Indian Health Commission determined that Indian health care was a federal trust responsibility. As such, the state match for American Indian/American Native Medicaid enrollees by Indian health programs was zero and 100 percent of funding for these services was derived from federal funds.

### III. <u>Federal Jurisdiction</u>

12.    The crimes of Health Care Fraud, in violation of Title 18, United States Code Section 1347 alleged herein involve federal health care dollars which were obtained by fraud against the administrators of those federal health care dollars, the State of Washington Medicaid Plan and the source of those federal dollars, the Centers for Medicare and Medicaid ("CMS"). Accordingly, this health care benefit program was the victim of the alleged offenses and the United States has jurisdiction pursuant to Title 18, United States Code Section 1152.

### IV. <u>Billing Codes and Procedures</u>

13.    Medical services were billed to health care benefit programs, including Medicare and Medicaid, by using standard Current Procedural Terminology ("CPT") codes.  CPT codes provide a uniform language that accurately describes medical, surgical, and diagnostic services which are billed to government and private health insurance programs.  The American Medical Association annually publishes a CPT Manual, which sets forth the criteria to be considered in selecting the proper codes to represent the services rendered.

14.    When submitting a claim for reimbursement for services, medical providers were required to use CPT codes to identify each procedure and service. Providers were required to accurately list the CPT code that most completely

INDICTMENT - 4
P20221lc.JBA.wpd

identified the procedures or services performed.

15.    Under State law and the Washington State Medicaid Plan, services provided through Indian Health Services ("IHS") and tribally-operated facilities were paid at the "encounter rate." DSHS covered one mental health encounter per client, per day. For purposes of the Tribal Health Program, DSHS defined a mental health encounter as "a medically necessary, face-to-face contact between a mental health provider and a client during which services are provided."

16.    Medicaid set forth guidelines regarding payment for Indian Health Services, including that Medicaid would not pay for services that were not deemed to be medically necessary. Medically necessary services were defined in the Washington Administrative Code ("WAC") as a requested service which was:

> reasonably calculated to prevent, diagnose, correct, cure,
> alleviate or prevent the worsening of conditions in the
> client that endanger life or cause suffering or pain, or
> result in illness or infirmity, or threaten to cause or
> aggravate a handicap, or cause physical deformity or
> malfunction. And further, that there is no other equally
> effective, more conservative or substantially less costly
> course of treatment available or suitable for the person
> requesting service.  For the purpose of this section,
> "course of treatment" may include mere observation or,
> where appropriate, no treatment at all.

WAC 388-500-005.

Additionally, Medicaid prohibited payment for subcontracted services provided by any individual who was not the licensed and contracted vendor.

17.    Claims were submitted to the Medicaid program by way of a Health Insurance Claim Form 1500 ("HCFA-1500") which was later referred to as the

INDICTMENT - 5
P20221lc.JBA.wpd

Center for Medicare and Medicaid Services (CMS)-1500 Form and its electronic equivalent. Providers submitted a CMS-1500 and its electronic equivalent form to the respective programs to document their claims for reimbursement. The claim form required submission of certain information relating to the services provided, including: patient information; type of service identified by a CPT code; a modifier to further describe such service, if applicable; date that the service was provided; charge for such service; diagnosis; and the name and/or provider National Provider Identifier (NPI) number of the performing physician.

## V.  Scheme to Defraud

18.     Beginning on or about January 1, 2006, and continuing through on or about December 31, 2010, within the Eastern District of Washington, **DEBRA VAN BRUNT-OREIRO**, defendant herein, individually, and doing business as **ADJR COUNSELING SERVICES**, devised and intended to devise a scheme and artifice to defraud the Washington State Medicaid Program and CMS in order to obtain money in connection with the delivery of and payment for health care benefits, items and services, by means of materially false and fraudulent representations set forth in the claims she submitted for payment to the Confederated Tribes of the Colville Reservation, Tribal Health Program.

### Purpose of the Scheme

19.     The purpose of the scheme and artifice to defraud Medicaid was to enrich **OREIRO** and to defraud Medicaid and Medicare of money to which **OREIRO** was not entitled by making materially false and fraudulent representations to the CCT Tribal Health Program, who in turn submitted these materially false and fraudulent claims to Medicaid for payment based on those representations.  Through this scheme and artifice to defraud, **OREIRO**, dba ADJR COUNSELING SERVICES, received approximately $358,955 (three hundred and fifty eight thousand nine hundred and fifty five dollars) as payment for these

INDICTMENT - 6
P20221lc.JBA.wpd

materially false and fraudulent claims to Medicaid from the Colville Confederated Tribe, Tribal Health Program, who, in turn, received $1,060,118 (one million sixty thousand one hundred and eighteen dollars) from Medicaid for payment on said claims.

Manner and Means of the Scheme

20.    It was part of the scheme and artifice to defraud that from on or about January 1, 2006, and continuing through December 31, 2010, **OREIRO**, dba ADJR COUNSELING SERVICES, obtained money from the CCT Tribal Health Program, who in turn obtained money from the Medicaid and Medicare programs, by: (a) submitting claims for reimbursement for mental health counseling services that were not actually provided; (b) submitting claims for reimbursement for mental health counseling services claimed to have been provided by **OREIRO** but which were instead provided by unqualified and contractually prohibited individuals; and (c) submitting claims for reimbursement for mental health counseling services that were not medically necessary.

21.    It was further part of the scheme and artifice to defraud that **OREIRO**, dba ADJR COUNSELING SERVICES, falsely documented weekly billing invoices submitted to the CCT that depicted charges for: (a) patient mental health counseling encounters which were not provided; (b) patient mental health counseling encounters claimed to have been provided by **OREIRO** but which were actually provided by unqualified and contractually prohibited individuals; and (c) patient mental health counseling encounters which were not medically necessary.

22.    It was further part of the scheme and artifice to defraud that after receiving **OREIRO**'s falsely documented weekly billing invoices, the CCT Behavioral Health Unit's billing department would transfer **OREIRO**'s materially false and fraudulent invoices for mental health services to a CMS-1500 claim form and its electronic equivalent for submission to the Department of Social and Health

INDICTMENT - 7
P20221lc.JBA.wpd

Services, Health and Recovery Services Administration (HRSA) for Medicaid reimbursement.

23. It was further part of the scheme and artifice to defraud that **OREIRO,** dba ADJR COUNSELING SERVICES, would conduct large group sessions consisting, at varying times, of as many as 25 to 31 children, and submit claims for these sessions as if she had conducted mental health encounters knowing full well that she provided no such service and that, even if she had, that such services were not medically necessary. In truth and in fact, these sessions were not clinically directed at addressing patients' diagnoses and had little to no clinical value to any of the patients' actual diagnoses.

24. It was further part of the scheme and artifice that **OREIRO**, dba ADJR COUNSELING SERVICES, would continue to treat children, often between four to six years of age, for several years with relatively no change in their respective diagnoses and in far excess of industry standards.

25. It was further part of the scheme and artifice that **OREIRO** would continue to treat patients who reported a general well being and were not in need of mental health counseling and fail to properly treat individuals who were among vulnerable populations in order to maximize her profits.

## VI.  Health Care Fraud

26.    The Grand Jury repeats and realleges Paragraph 1-25 of this Indictment as if fully set forth in each of the substantive false statements relating to criminal health care fraud counts below.

## COUNTS 1-21

27. That on or about January 1, 2006 and continuing to on or about December 31, 2010, in the Eastern District of Washington, **DEBRA VAN BRUNT-OREIRO**, defendant herein, individually, and doing business as ADJR COUNSELING SERVICES, knowingly and willfully executed and attempted to

INDICTMENT - 8
P20221lc.JBA.wpd

execute the above-described scheme and artifice to obtain, by means of materially false and fraudulent pretenses, and representations, money owned by and under the custody and control of DSHS, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items and services by falsely representing the claimed services as follows:

| COUNT | Approx. Date of Bill | Patient Initial | Amount Claimed | Amount Paid | Procedure Code |
|---|---|---|---|---|---|
| 1 | 8/7/2007 | FMB | $256 | $256 | Mental Health Encounter |
| 2 | 9/5/2007 | FMB | $256 | $256 | Mental Health Encounter |
| 3 | 7/9/2008 | LJB | $253 | $253 | Mental Health Encounter |
| 4 | 7/10/2008 | LJB | $253 | $253 | Mental Health Encounter |
| 5 | 5/20/2008 | DWJ | $253 | $253 | Mental Health Encounter |
| 6 | 7/9/2008 | DWJ | $253 | $253 | Mental Health Encounter |
| 7 | 8/9/2007 | OMK | $256 | $256 | Mental Health Encounter |
| 8 | 7/10/2008 | OMK | $253 | $253 | Mental Health Encounter |
| 9 | 6/28/2007 | OMK | $256 | $256 | Mental Health Encounter |
| 10 | 3/26/2008 | ORK | $253 | $253 | Mental Health Encounter |

INDICTMENT - 9

P20221lc.JBA.wpd

| 11 | 8/19/2009 | ORK | $268 | $268 | Mental Health Encounter |
| 12 | 7/25/2007 | MSL | $256 | $256 | Mental Health Encounter |
| 13 | 8/9/2007 | MSL | $256 | $256 | Mental Health Encounter |
| 14 | 7/11/2007 | CNL | $256 | $256 | Mental Health Encounter |
| 15 | 8/25/2009 | CNL | $268 | $268 | Mental Health Encounter |
| 16 | 7/23/2008 | AGM | $253 | $253 | Mental Health Encounter |
| 17 | 7/30/2008 | AGM | $253 | $253 | Mental Health Encounter |
| 18 | 7/29/2009 | DAM | $268 | $268 | Mental Health Encounter |
| 19 | 8/26/2009 | DAM | $268 | $268 | Mental Health Encounter |
| 20 | 05/12/2008 | DMR | $253 | $253 | Mental Health Encounter |
| 21 | 7/30/2008 | DMR | $253 | $253 | Mental Health Encounter |

INDICTMENT - 10
P202211c.JBA.wpd

all in violation of 18 U.S.C. § 1347(2).

DATED this __22__ day of February, 2012.

A TRUE BILL

_____
Foreperson

Michael C. Ormsby
United States Attorney

K. Jill Bolton
Assistant United States Attorney

INDICTMENT - 11
P202211c.JBA.wpd